## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

SAFE HAVEN BABY BOXES,

      Plaintiff,                    CASE NO.: 2:24-cv-00051-JLB-KCD

vs.

A SAFE HAVEN FOR NEWBORNS
GLORIA M. SIVERIO FOUNDATION.
NICK E. SILVERIO.
SOUTH TRAIL FIRE & RESCUE DISTRICT; and
AMY BOLLEN,

      Defendants.

_____/

## DEFENDANT, SOUTH TRAIL FIRE & RESCUE AND DEFENDANT, BOLLEN AMENDED MOTION TO DISMISS AMENDED COMPLAINT[1]

      Defendant, SOUTH TRAIL FIRE & RESCUE DISTRICT ("District") and

Defendant, AMY BOLLEN ("Bollen") (collectively, "Defendants") file this

Amended Motion to Dismiss the Amended Complaint filed by Plaintiff, SAFE

HAVEN BABY BOXES ("Plaintiff").  (Doc. 69.)  This motion is made pursuant to

Federal Rule of Civil Procedure 12(b)(6).

## INTRODUCTION

      This is an action wherein Plaintiff asserts several theories for defamation

against Defendant District and Defendant Bollen based on emails.  Plaintiff,  also

alleges that Defendant Bollen interfered with its business relationships with the

Defendant District and with the general community involving "other fire stations

---

[1] Amended to update Certificate of Conferral under local rule 3.01(g).

in Florida" by making false statements about Plaintiff and its baby boxes ("Devices").   The Court correctly dismissed this action.  See <u>Safe Haven Baby Boxes v. A Safe Haven for Newborns Gloria M. Siverio Found.</u>, No. 2:24-CV-00051-JLB-KCD, 2025 WL 660772, at *6 (M.D. Fla. Feb. 28, 2025).  The same result is warranted regarding the Amended Complaint.

## <u>ALLEGATIONS OF THE AMENDED COMPLAINT</u>

The Amended Complaint has 148 paragraphs of allegations advancing the following four counts: **(i)** Count I - Defamation as libel directed to all defendants: Defendant District, Defendant Bollen, Defendant A Safe Haven For Newborns Gloria M. Siverio Foundation and Defendant Nick E. Silverio **(ii)** Count II – Defamation as slander, **(iii)** Count III – Defamation as Libel Per Se directed to Defendant Bollen and/or District; and **(iv)** Count IV - tortious interference with a contract or business relationship directed to Defendant Bollen, Defendant A Safe Haven For Newborns Gloria M. Siverio Foundation, and Defendant Nick E. Silverio. Notably, Defendant District has been removed from Count IV.

At the heart of the matter is Plaintiff's purported initiative to protect newborns and the anonymity of the surrendering parent.[2]  However, that initiative is not incongruent with the District's or Bollen's interest.  Each day the

---

[2] See "What is a Safe Haven Baby Box?" https://www.shbb.org/ (last visited April 1, 2025). The court can take judicial notice of the website.  *Sream, Inc. v. PB Grocery, Inc., of Palm Beach*, No: 16-cv-81584, 2017 WL 6409006, at *4 n.5 (S.D. Fla. March 1, 2017) (same); *id.* ("[I]n resolving a motion to dismiss, a court may consider materials subject to judicial notice without converting the motion to dismiss into a motion for summary judgment."). *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1277–1278 (11th Cir. 1999); *Mulhall v. UNITE HERE Local* 355, 618 F.3d 1279, 1289 n.10 (11th Cir. 2010).

fire fighters put their lives on the line for the safety of the community.  The District provides fire protection and rescue services to the residents in South Fort Myers and Lee County, Florida.[3]  The Amended Complaint fails to state a cause of action, for a second time time; and, it is replete with conclusory allegations.

The Defendant District and Defendant Bollen move to dismiss the Amended Complaint because Plaintiff failed to establish the elements to state a claim for Counts I, III, and IV. The Amended Complaint should be dismissed—this time with prejudice.

## **LEGAL STANDARD**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." Ashcroft v. Iqbal, 556 U.S. 662, 677–678 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  Labels, conclusions, and formulaic recitations of the elements of a cause of action are insufficient. Id. at 678 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Mere naked assertions are also insufficient. Id.  A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." Id. (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." Id.

---

[3] South Trail Fire & Rescue District " Who We Are and What We Do."
https://www.southtrailfirefl.gov/ (last visited April 1, 2025).

(internal citation omitted). The Court is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. Id. at 678. Overall, the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." See Erickson v. Pardus, 551 U.S. 89, 93 (2007).

## **MEMORANDUM OF LAW**

### A.    Count I Defamation – (Libel as to all defendants)

"Defamation under Florida law has these five elements: (1) publication; (2) falsity; (3) the statement was made with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) the statement must be defamatory." Turner v. Wells, 879 F.3d 1254, 1262 (11th Cir. 2018) (quoting Jews For Jesus, Inc. v. Rapp, 997 So. 2d 1098, 1106 (Fla. 2008)).[4]  The Defendants are still indistinguishably lumped together without factual allegations regarding Public Official or Private Person.   The Amended Complaint fails on the third prong.

To survive a motion to dismiss, a complaint must "plausibly allege that the

---

[4] "Because the alleged defamation was published in Florida, Florida state law is controlling." Alan v. Wells Fargo Bank, N.A., 604 Fed. Appx. 863, 865 (11th Cir. 2015). When "analyzing defamation claims, we apply Florida's substantive law." Turner v. Wells, 879 F.3d 1254, 1262 (11th Cir. 2018) (citation omitted). "Where the highest court—in this case, the Florida Supreme Court—has spoken on the topic, we follow its rule." Id. (citing Molinos Valle Del Cibao, C. por A. v. Lama, 633 F.3d 1330, 1348 (11th Cir. 2011)). Decisions of the Florida appellate courts "provide guidance for this prediction." Id. (citing Bravo v. U.S., 577 F.3d 1324, 1325 (11th Cir. 2009)) (per curiam) (citation omitted).  "As a general matter, we must follow the decisions of these intermediate courts." Id. at 1325–1326. "But we may disregard these decisions if persuasive evidence demonstrates that the highest court would conclude otherwise." Id.

defendant made each defamatory statement" with "actual malice." <u>Markle v. Markle</u>, No. 8:22-CV-511-CEH-TGW, 2024 WL 1075339, at *5 (M.D. Fla. Mar. 12, 2024). To plead actual malice, a plaintiff "must allege facts sufficient to give rise to a reasonable inference that the false statement was made with knowledge that it was false or with reckless disregard of whether it was false or not." <u>Turner</u>, 879 F.3d at 1273 (quotation omitted); accord <u>N.Y. Times v. Sullivan</u>, 376 U.S. 254, 280 (1964); <u>Markle</u>, 2024 WL 1075339, at *5 (same). By contrast, a plaintiff must plead which defendant was negligent when publishing a statement about a private person. <u>See</u> <u>Turner</u>, 879 F.3d at 1273.

An allegation that a defendant acted "with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person" should also specify whether the **plaintiff** is a private individual or a public official or figure. <u>Safe Haven Baby Boxes</u>, 2025 WL 660772, at *4 (quoting <u>Silvester v. Am. Broad. Companies, Inc.</u>, 839 F.2d 1491, 1493 (11th Cir. 1988) ("The test for determining liability in a defamation case turns on whether the libeled party is a public or private figure and on whether the defamatory publication addresses a public or private concern.").

Here, the third element is insufficiently pleaded because Plaintiff did not allege facts to plausibly show that statements were made negligently or with actual malice. (Doc. 69 at ¶¶93–115); <u>Safe Haven Baby Boxes</u>, 2025 WL 660772, at *4–5. And, it fails to allege whether the publication addresses a public or private concern. <u>Safe Haven</u>, <u>Silvester</u>, supra.

An allegation that a defendant acted "with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person" should also specify whether the plaintiff is a private individual or a public official or figure. *See* <u>Silvester</u>, 839 F.2d at 1493. The only facts alleged in the Amended Complaint that could be an allegation of actual malice or negligence are that the false statements were emailed on July 24, 2023. But, the Amended Complaint fails since the emails are still ***before*** Plaintiff sent a cease-and-desist letter to Defendant Bollen on August 25, 2023—not after. (Doc. 69-2.)

Regardless, the facts of the Amended Complaint, about her statements, do not establish that Defendant Bollen's continued email, to other co-workers about information that she "learned," at a training class, demonstrate actual dissemination, negligence, or malice. Simply put, there is no suggestion that the Defendant Distict or Defendant Bollen disseminated statements with actual malice or negligence prior to receiving the letter. Therefore, the Amended Complaint fails to state a claim for defamation as to the Defendant District and Bollen.

**B.     Count III - Libel Per Se  (as to Defendant Bollen "and/or District")**

"The Eleventh Circuit Court of Appeals held that a "written publication constitutes libel per se under Florida law if, when considered alone and without innuendo, it (1) charges that a person has committed an infamous crime; (2) tends to subject one to hatred, distrust, ridicule, contempt, or disgrace; or (3)

tends to injure one in his trade or profession." <u>Alan</u>, 604 Fed. Appx. at 865 (affirming dismissal) (citing <u>Richard v. Gray</u>, 62 So. 2d 597, 598 (Fla. 1953)); <u>Techtronic Indus. Co. Ltd. v. Bonilla</u>, No. 8:23-CV-1734-CEH-AEP, 2023 WL 8543762, at *4 (M.D. Fla. Dec. 11, 2023); <u>Markle</u>,  2024 WL 1075339, at *5 (quoting <u>Jews for Jesus</u>, 997 So. 2d at 1108–1109)).

When determining whether a published statement constitutes libel per se, an arbiter of fact "is constrained to the four corners of the publication and may not consider outside context in a libel per se claim." <u>Rubinson v. Rubinson</u>, 474 F. Supp. 3d 1270, 1275 (S.D. Fla. 2020)  "In addition, the language of the document should not be interpreted in the extreme, but construed as the naturally common mind would understand it." <u>Id.</u> (quotation and citation omitted).

In <u>Rubinson</u>, the court held that it was "hard to conceive how when considering the emails alone, Defendant's mention of virtually the same conduct suddenly casts Plaintiff in a negative light, let alone, subjects him to hatred, distrust, ridicule, contempt, or disgrace." <u>See</u> <u>id.</u> "In a per se action, the injurious nature of the statement is apparent from the words in the statement itself and the court consequently takes notice of that fact." <u>Aflalo v. Weiner</u>, No. 17-61923-CIV, 2018 WL 3235529, at *2 (S.D. Fla. July 2, 2018).

To being, Defendant objects and moves to dismiss, with prejudice, the new Count III brought against the Defendant District by Plaintiff.  (Doc. 69 at 25.) (stating: Count III Libel Per Se "as to Defendants Bollen ***and/or*** District")

(emphasis added). The original complaint only pleaded Count III against Defendant Bollen (Doc. 1 at 8), and Plaintiff was directed not to bring any new counts in the Amended Complaint. Safe Haven Baby Boxes, 2025 WL 660772, at *7 ("No additional/new claims may be raised in any second amended complaint.").

With respect to Defendant Bollen, the Amended Complaint alleges that "several fire stations . . . have refused to respond or speak to Plaintiff" as a result of statements made in an email that allegedly caused reputational damage to Plaintiff. (Doc. 69 at ¶¶112, 115); see Safe Haven Baby Boxes, 2025 WL 660772, at *5 (quoting Matonis v. Care Holdings Grp., L.L.C., 423 F. Supp. 3d 1304, 1315 (S.D. Fla. 2019)(finding that the plaintiff adequately pleaded libel per se by "alleg[ing] that the statements tend to injure her profession . . . because no company would do business with [the plaintiff] if it believed" the statements ***and*** she "was harmed by the diminished economic value of the . . . reputation she built . . .")) (emphasis added). However, those allegations are not present in the Amended Complaint.

While the Amended Complaint asserts, in a conclusory manner, harm to reputation, more is required to state a cause of action. See Matonis, 423 F. Supp. 3d at 1315. In Matonis, the plaintiff alleged that there was harm by "diminished economic value" coupled with harm to reputation. The Amended Complaint does not include any allegations to support damages. Plaintiff would be hard pressed to do so since there are no facts about the amounts that Plaintiff lost (or

8

diminished) due to an email by Defendant Bollen.  The entirety of the count is pure speculation with no damages.

Furthermore, the exhibits attached to the Amended Complaint belie the allegations that Defendant Bollen harmed Plaintiff's reputation.  In the July 24, 2023 email, Andrea Schuch had already told Plaintiff "***no***" before Bollen even emailed her about the news article or  information that she learned from the PIO Meeting.  (Doc. 69-1.) ("I had some lady call and ask if we wanted boxes/were going to get boxes and I basically just told her no.").   Therefore, Defendant Bollen's email does not establish, nor do the facts of the Amended Complaint, establish any factual basis for Plaintiff to plead harm to its reputation.  The facts show that Defendant Bollen simply forwarded an emailed that she received from the Senior Girl Scout the same day along with training materials that she received.  (Doc. 69-1 at 11.)  Apparently, other fire stations had already rejected Plaintiff's Device before Bollen even circulated the information that she received from the PIO Meeting.  At the time of the email, on July 24, 2023, only one Florida fire station, in Ocala, told Plaintiff, "yes," according to the Senior Girl Scout.  (Doc. 69-1 at 12.)  However, the exhibits show that Cape Coral had already told Plaintiff "no" before Bollen's July 24, 2023, email.  (Doc. 69-1 at 11.)

There is no factual basis in the Amended Complaint to demonstrate harm to the Plaintiff's reputation.  For example, the Girl Scout email shows that Plaintiff was still trying to get Florida fire stations used to the "***idea***" of putting a baby in a box by installing the Device.  (Doc. 69-1 at 12.)  The exhibits attached to

the Amended Complaint demonstrate that Plaintiff already had a questionable reputation in Florida because, as the Senior Girl Scout admitted, Plaintiff's attempts to use a box, instead of surrendering the baby to a person, had already failed in Florida "three times." (Doc. 69-1 at 13.) ("However, Florida has tried to pass a Safe haven Baby Box Law, and it has failed ***three times***.") (emphasis added).   Whether a fire station chose to use a Device, or not, has nothing to do with Plaintiff's reputation, or the email that Defendant Bollen sent. See Griffin Indus., Inc. v. Irvin, 496 F.3d 1189, 1206 (11th Cir. 2007) ("Indeed, when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern.").  So, again, Plaintiff's attempt to use Defendant Bollen's email still fails to state a cause of action.  Indiana law, is not Florida law.  No fire station is required to incur the expense, resource, or burden of maintaining a Device. The entire fire station is already a safe haven—even without the Device.  Both Plaintiff and Defendant purport to protect—not harm.  This count fails.

**C.    Count IV  - Tortious Interference with a Contract or Business Relationship (Bollen)**

"The elements of tortious interference with a business relationship are (1) the existence of a business relationship . . . (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." Vibo Corp. v. Us Flue-Cured Tobacco Growers, 762 F. App'x 703, 706 (11th Cir. 2019) (quoting Dunn v. Airline Pilots Ass'n, 193 F.3d

1185, 1191 (11th Cir. 1999)); Ethan Allen, Inc. v. Georgetown Manor, Inc., 647 So. 2d 812, 814 (Fla. 1994)(stating elements of tortious interference). To support this claim, Plaintiff was required to allege that the District and Bollen had knowledge of, and intentionally and unjustifiably interfered with, Plaintiff's relationship (either contractual or business) with the other fire stations in Florida.

Here, Plaintiff has not alleged facts to establish the first, second, and third elements of tortious interference with a business relationship.

### 1. *The Amended Complaint does include facts to establish that a business relationship exists.*

"In Florida, a plaintiff may properly bring a cause of action alleging tortious interference with present or prospective customers but no cause of action exists for tortious interference with a business's relationship to the community at large. Ethan Allen, 647 So. 2d at 815 (internal citation omitted)(Eleventh Circuit certified question to Supreme Court of Florida). As a threshold matter, an action for tortious interference with a business relationship requires a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been **completed** if the defendant had not interfered." Ethan Allen, 647 So. 2d at 815 (internal citation omitted) (emphasis added). A business relationship, "does not require the existence of a contractual agreement." Dunn, 193 F.3d at 1191. "It does, however, **require** a relationship with a particular party, and **not** just a relationship with the general business community." Id. (citing Ethan Allen, 647 So. 2d at 815) (emphasis added).

Here, the Amended Complaint suffers from the same defects as the orginal complaint. It is still bereft of facts establishing the existence of a current business relationship between the Plaintiff and a particular fire station. See Vibo, supra. In a conclusory manner, Plaintiff alleged that it had a business relationship with Defendant District (Doc. 69, ¶136) and other fire stations at large. (Doc. 69, ¶138.) This is insufficient to state a cause of action.

In the first place, the Amended Complaint does not include any facts, whatsoever, demonstrating that the Defendant District has a business relationship, understanding, or agreement with the Plaintiff with respect to installation of the Device. (Doc. 69, ¶136.) This is because there is no business relationship with the Defendant District. The exhibits attached to the Amended Complaint show there is no business relationship. Hence, this count still fails. See Safe Haven Baby Boxes, 2025 WL 660772, at *6 ("Because there is no business relationship that the District or Bollen interfered with, the second and third elements of tortious interference—defendant's knowledge of the business relationship and intentional and unjustified interference of the business relationship—also fail.").

Moreover, the allegations of the Amended Complaint cut against itself. On the one hand, the Amended Complaint alleges that Plaintiff "inquired about installing a Device at its location" on the other hand it says that Plaintiff and Defendant District "reached an agreement." (Doc. 69, ¶136.) No such business relationship, agreement, or understanding with the District District exists. This

12

allegation is false and unsupported by any factual basis to demonstrate what the terms of the alleged "agreement" or business relationship are.  (Doc. 69, ¶136.) Even on a motion to dismiss, this Court is not required to accept a false allegation as true.  See Twombly, 550 U.S. at 678 (only "well-pleaded facts are accepted as true"). Thus, prong one is still not established.  This Court directed Plaintiff to cure this pleading deficiency, and Plaintiff failed to do so.  Hence, the Court could end its analysis, here, and dismiss this count with prejudice.

Even so, the Amended Complaint still fails because it continues to allege that Plaintiff had a business relationship with the other fire departments in the State of Florida.  (Doc. 69, ¶¶138–140.)  The Amended Complaint pleaded that Plaintiff "communicates" with "fire departments in the State of Florida."  (Doc. 69, ¶138.) Plaintiff still failed to establish that Plaitiff had a contract, or business relationship,  with any particular fire station.  See Intl. Sales & Serv., Inc. v. Austral Insulated Prod., Inc., 262 F.3d 1152, 1156 (11th Cir. 2001) (examining a tortious interference claim and distinguishing between relationships with the community at large and ongoing relationships with existing customers); see also Dunn, 193 F.3d at 1191; Vibo, 762 F. App'x at 706. Hence, this prong fails.

### 2. The Amended Complaint does not allege Defendants had knowledge of Plaintiff's business relationships, so there are no damages.

Concerning the second and fourth elements, the Amended Complaint does not include facts to establish that Defendant Bollen had knowledge of the nature of Plaintiff's relationship with the Defendant District.  As a practical matter,

Defendant Bollen could not have knowledge because, contrary to the allegations of the Amended Complaint, there is no relationship with Plaintiff and Defendant District.  If there was any such business relationship, this would be a breach of contract count—it is not.  Thus, Defendant Bollen could not have known about Plaintiff's specific rights that flow from relationships allegedly with Defendant District or  "other fire stations in Florida."  At best, the Amended Complaint establishes that Plaintiff simply hoped that "other fire stations in Florida" would accept the Device. This is pure speculation, which fails to state a cause of action.

Moreover, "the mere hope that some of its past customers may choose to [accept the Device] cannot be the basis for a tortious interference claim."  See Vibo, 762 Fed. Appx. at 706.  The facts simply do not establish that, in all probability, that neither the District nor "other fire stations" would have accepted the Device if Bollen had not interfered.  See Ethan Allen, 647 So. 2d at 815. Where there are no facts establishing that Defendant District or Defendant Bollen knew about Plaintiff's relationship with other fire stations in Florida there can be no damages under prong four.  Id.  (finding a plaintiff  "may not recover, in a tortious interference with a business relationship tort action, damages where the relationship is based on speculation regarding future sales to past customers.").

### 3.  No  allegations of intentional and unjustified interference

"As to the element of intentional and unjustifiable interference, if 'a defendant interferes with a [ ] business relationship in order to safeguard a preexisting economic interest of his own, the defendant's right to protect his own

established **economic** interest outweighs the plaintiff's right to be free of interference, and his actions are usually recognized as privileged and nonactionable.'" <u>CMR Constr. and Roofing, LLC v. UCMS, LLC</u>, No. 21-11183, 2022 WL 3012298, at \*5 (11th Cir. July 29, 2022) (quoting <u>Duty Free Ams., Inc. v. Estee Lauder Cos.</u>, 797 F.3d 1248, 1280 (11th Cir. 2015))(confirming dismissal of case) (emphasis added).  "In other words, the privilege to interfere does not encompass the purposeful causing breach of business relationship." <u>CMR Constr. and Roofing</u>, 2022 WL 3012298, at \*5.  (citation omitted) (alteration omitted).

"What the parties may not do, however, is engage in intentional and unjustified interference by engaging in fraud or collusion." <u>Id.</u> (citing <u>Morsani v. Major League Baseball</u>, 663 So. 2d 653, 657 (Fla. 2d DCA 1995) (finding that the appellants stated a cause of action for tortious interference because "appellants have alleged the use of threats, intimidation and conspiratorial conduct").  The Amended Complaint failed to plead facts to establish lack of justification.

While the Amended Complaint alleges conclusory allegations that Defendant Bollen knew, and was aware of, a business relationship with Defendant District or other fire stations, Plaintiff included no facts to demonstrate that Defendant Bollen "purposefully and intentionally" interfered with, a contractual or business relationship with Defendant District or the other fire stations in Florida to support its claims.  Or, that the interference is unjustified.  <u>See</u> <u>Vibo</u>, <u>CMR Constr. and Roofing</u>, supra.  Plaintiff failed to allege

15

facts to support those conclusory assertions.  The Amended Complaint summarily states that Defendant Bollen attempted to "dissuade District and other fire departments from maintaining contracts and business relationships with Plaintiff."  (Doc. 69 ¶146.) Again, Defendant District states that it does ***not*** have a business relationship, nor does it have a contract with Plaintiff to install the Device at its location, for any particular price, date, and nor any length of time.  If that were true, then Plaintiff would need to plead those facts to survive a motion to dismiss.  Thus, Plaintiff is relegated to pleading facts to show that Bollen intentionally and unjustifiably interfered with a contract with "other fire departments" in Florida.   Plaintiff falls woefully short of this task.

The Amended Complaint fails to include facts to establish that Defendant Bollen "spread falsehoods and misinformation about Plaintiff."  (Doc. 69 ¶146.)  In fact, the exhibits attached to the Amended Complaint contradict these allegations.  (Doc. 69-1 and Doc. 69-2.)  As mentioned above, Bollen attended a "state PIO meeting." (Doc. 69-1.)  The emails state that Bollen  simply "wanted to share the info [that she] . . . ***learned***."  (Doc. 69-1.)(emphasis added).  The email, attached to the Amended Complaint, shows that Defendant Bollen simply passed along information provided to her in a statewide training course that she was required to attend. (Doc. 69-1.)  Thus, even taking the conclusory allegations as true, this particular email contradicts the allegations that Defendant Bollen had an intent to harm, or unjustafiably harm Plaintiff, or interefere with Plaintiff's initiatives.  Irvin, 496 F.3d at 1206 when the exhibits contradict the general and

16

conclusory allegations of the pleading, the exhibits govern).

Here, Plaintiff pleaded that as a result of Defendant Bollen's actions "other fire departments have backed out of **negotiations** with Plaintiff and refused to respond to Plaintiff's communications, with respect to installation of its Devices." (Doc. 69 ¶148.) (emphasis added). What contract? Which of the fire stations? One fire fighter, seemed "receptive;" that is not an agreement or a contract. Because Plaintiff failed to support its tortious interference claims with the pertinent facts, a district court does not err in dismissing Plaintiff's tortious interference claims. CMR Constr. and Roofing, 2022 WL 3012298, at *5. This is especially true where the Amended Complaint unambiguouly states that Plaintiff was simply "negotiating"with unspecified fire stations at large. There is no business relationship.

Accordingly, the Court should dismiss this count with prejudice.

## CONCLUSION

*Wherefore*, the Court should grant this motion.

## LOCAL RULE 3.01(g) AMENDED CERTIFICATION

On April 4, 2025, the undersigned conferred with counsel for Plaintiff via email, and the Plaintiff objects to the entirety of the relief requested herein. On April 3, 2025, the undersigned conferred with Counsel for Defendants, A Safe Haven for Newborns Gloria M. Siverio Foundation and Nick E. Silverio ("Defendants") via phone and email, and they do not object to the relief herein.

On April 10, 2025, the undersigned spoke with counsel for the Plaintiff over the phone, and the Plaintiff objects to the entirety of the relief requested herein.

Dated: April 10, 2025.

Respectfully submitted,

BUTLER WEIHMULLER KATZ CRAIG LLP

/s/ Latasha Scott
MATTHEW J. LAVISKY, ESQ.
Florida Bar No.: 48109
mlavisky@butler.legal
LATASHA L. SCOTT, ESQ.
Florida Bar No: 52316
lscott@butler.legal
bryan@butler.legal
400 N. Ashley Drive, Suite 2300
Tampa, Florida  33602
Telephone:  (813) 281-1900
*Counsel for Defendant South Trail Fire and
Rescue District and Defendant, Amy Bollen*

## CERTIFICATE OF SERVICE

I certify that a copy hereof has been furnished to:

| COLE, SCOTT AND KISSANE | POLASKI, LLP |
|---|---|
| Justin Steven Maya, Esq.<br>Horacio Ruiz-Lugo, Esq.<br>9150 South Dadeland Blvd.<br>Suite 1400<br>Miami, FL 33156<br>horacio.ruiz-lugo@csklegal.com<br>justin.maya@csklegal.com<br><br>*Counsel for Defendant, A Safe Haven for Newborns, Gloria M. Siverio Foundation and*<br><br>*Counsel for Defendant, Nick E. Silverio* | Kevin P. Podlaski, Esq.<br>Adam Clay, Esq.<br>M. Brooks Pearce, Esq.<br>Nicholas A. Podlaski, Esq.<br>803 S. Calhoun Street, Suite 110<br>Fort Wayne, IN 46802<br>nick@podlaskilegal.com<br>Kevin@podlaskilegal.com<br>brooks@podlaskilegal.com<br>melanie@podlaskilegal.com<br>*Pro Hac Vice*<br><br>*Counsel for Plaintiff, Safe Haven Baby Boxes* |

On April 10, 2025 by CM/ECF.

/s/Latasha Scott
LATASHA L. SCOTT, ESQ.

18